UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONNIE WONG,

        Plaintiff,

                              CASE No. 1:25-CV-363

v.

                              HON. ROBERT J. JONKER

UNIFI AVIATION, LLC,

        Defendant.
_____/

## ORDER APPROVING AND ADOPTING REPORT AND RECOMMENDATION

The Court has reviewed Magistrate Judge Vermaat's Report and Recommendation in this matter (ECF No. 19); Plaintiff's Objection to the Report and Recommendation, as supplemented (ECF Nos. 20, 21); and Defendant's Response to Plaintiff's Objection (ECF No. 22). Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED R. CIV. P. 72(b)(3). De novo review in such circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

The Court has reviewed de novo the claims and evidence presented to the Magistrate Judge; the Report and Recommendation itself; and Plaintiff's objections.  After its review, the Court finds the Magistrate Judge's Report and Recommendation is factually sound and legally correct.

Plaintiff asserts a variety of employment discrimination claims against Defendant Unifi Aviation, LLC.  As set out in Complaint and materials submitted in response to the defense motion, Plaintiff applied for the position of passenger services agent with Defendant in August 2022.  When Plaintiff applied, she received assurances regarding job flexibility and travel benefits.  Plaintiff specifically claims she was told her job hours would be flexible because other employees would want to trade and pick up shifts.  Plaintiff was hired on the spot and completed the onboarding process via an online vendor.  As part of this process, the defense says, Plaintiff electronically signed the arbitration agreement that is the subject of the defense motion. In a declaration, Plaintiff says that she was urged to hurry and "click through" the onboarding materials by her employer.  Accordingly, she says, "I do not recall signing any arbitration agreement. Any such document would have been buried among numerous onboarding forms with no meaningful opportunity to review or negotiate its terms."  (Decl. ¶ 19, ECF No. 14, PageID.113). And in an exhibit attached to the declaration, there is a handwritten note, presumably authored by Plaintiff, that the arbitration agreement was "buried within 10 documents training plus."  (ECF. No. 14-2, PageID.132).

After starting her employment, Plaintiff says she was assigned early shifts that disrupted her sleep schedule and led to migraines.  Plaintiff sought to avail herself of the promised flexibility by posting her shifts for trade.  But no one responded.  Plaintiff then attempted to improve her chances by putting all of her scheduled shifts up for trade, intending to continue to

work by picking up other employees' shifts.    But she says that her employer blocked these efforts by imposing a 90-day waiting period before Plaintiff would be eligible to trade shifts and then refused her requests for accommodation.    Indeed, she says, her employer only doubled down on scheduling Plaintiff for early shifts.    Plaintiff says she was unable to work for four consecutive days due to migraines and was ultimately constructively discharged by her employer.[1]    Plaintiff later reapplied for her former position when the station manager who Plaintiff says was primarily responsible for the complained of events retired, but she discovered that the defendant had flagged her as ineligible for rehiring and a promised follow-up went unanswered.    This lawsuit followed. On July 16, 2025, the defense moved to enforce the arbitration agreement that it says Plaintiff signed during the onboarding process. (ECF No. 7).    Following briefing, the Magistrate Judge issued a Report and Recommendation that that concludes the defense motion should be granted. Plaintiff now objects to the Magistrate Judge's Report and Recommendation.

Plaintiff's objections fall into two general buckets.    In the first bucket, Plaintiff contests the Magistrate Judge's conclusion that there was a valid agreement to arbitrate formed between the parties, and she further argues there is at least a genuine issue of material fact on the point that should have resulted in an evidentiary hearing.    In the second bucket, for various reasons, Plaintiff says that even if there is a valid agreement to arbitrate, the Court should find it is unenforceable in this case.    For the reasons that follow, the Court concludes Plaintiffs objections lack merit.

---

[1] Plaintiff alleges the Magistrate Judge misstated the record when he described Plaintiff as missing work rather than being unable to work.   Plaintiff says she performed her scheduled shifts and that this work led to a migraine spanning four days.   During this time, she says she was unable to work but did not actually miss any work because of her work schedule.   (ECF No. 20, PageID.185). To the extent there was any factual misstatement here, it is not material to the issues for decision in the motion to compel.

The Magistrate Judge correctly held that the Federal Arbitration Agreement (FAA) applies to this case, and that courts generally recognize a strong presumption in favor of arbitration. Notwithstanding this general principle, Plaintiff says the motion to compel arbitration must be denied because there was no agreement to arbitrate. "Although the Federal Arbitration Act requires a court to summarily compel arbitration upon a party's request, the court may do so only if the opposing side has not put the making of the arbitration contract 'in issue.'" *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 835 (6th Cir. 2021) (quoting 9 U.S.C. § 4). Courts apply Rule 56 of the Federal Rules of Civil Procedure to determine whether contract formation has been placed "in issue." *Id.* at 838-39. Accordingly, Plaintiff must show a genuine issue of material fact with respect to contract formation. The Court agrees with the Magistrate Judge that Plaintiff has failed to do so here, and that no evidentiary hearing is needed.

Defendant argues, and Plaintiff does not dispute, that Michigan law applies to this action and that Michigan law permits electronic signatures on employment agreements. *See Boykin*, 3 F.4th at 839 (citing *Hall v. Pac. Sunwear Stores Corp.*, 2016 WL 1366413, at *5-*6 (E.D. Mich. Apr. 6, 2016)); *see also Martyn v. J.W. Korth & Co.,* No. 1:11-CV-407, 2011 WL 2144618, at *2 (W.D. Mich. June 1, 2011) (Bell, J.). In this case, Defendant has "the initial duty to present evidence that would allow a trier of fact to find all required elements of a contract" including Plaintiff's acceptance. *Boykin*, 3 F.4th at 839. Defendant did so here by producing the declaration of Gregory O'Donoghue, Defendant's human resources manager, who states that Defendant required all newly hired employees—including Plaintiff—to complete an on-boarding process through a third-party digital portal, and that as part of that process, Plaintiff was required to review and assent to various policies, and accept the Mutual Arbitration Agreement at issue in

this case. Mr. O'Donoghue further states that on August 15, 2022, Plaintiff reviewed and signed the arbitration agreement. (ECF No. 7-2, PageID.70). Accordingly, the burden shifted to Plaintiff to present "'specific facts, as opposed to general allegations,' that would allow a rational trier of fact to find that [s]he did not acknowledge the agreement or learn about the arbitration condition of employment in other ways." *See Boykin*, 3 F.4th at 839 (citing *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020)).

The Court agrees with the Magistrate Judge that Plaintiff has not met her burden. Plaintiff's objections are unpersuasive because Plaintiff's sworn statement that she does not recall signing the arbitration agreement is insufficient to create a genuine issue of material fact with respect to contract formation. *Id.* ("[a] party thus cannot expect to obtain a trial . . . simply by testifying that the party does not 'remember' signing an arbitration contract or receiving information about arbitration."); *see also Hammond v. Floor and Decor Outlets of America*, No. 3:19-cv-1099, 2020 WL 6459642, at *6 (M.D. Tenn. Nov. 3, 2020) (collecting cases and concluding employee's statement that he "do[e]s not believe" and "do[es] not recall" entering and reviewing arbitration agreement were insufficient to create issue of fact on contract formation).

In her objections, Plaintiff states for the first time not only that she did not recall signing the agreement, but also that she did not see the arbitration agreement. (ECF No. 20, PageID.186). On this record, this is not enough to create an issue of fact for trial either. For one thing, arguments raised for the first time in objections to a magistrate judge's report and recommendation are generally considered to be forfeited. *Odell v. Kalitta Air, LLC*, 107 F.4th 523, 533 (6th Cir. 2024). Moreover, unlike the earlier declaration, the statement in Plaintiff's objections is not sworn. Furthermore, read in context, it appears Plaintiff is simply referencing her contention of

a "clickthrough" culture and the statements her employer made to hurry through the onboarding and not claiming that she was not presented with the arbitration agreement at all. Accordingly, Plaintiff's objections are without merit.

Plaintiff also contests contract formation based on her statements about being rushed through the onboarding process. *See Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 381 (6th Cir. 2005) (noting that in evaluating whether a plaintiff has knowingly and voluntarily waived right to pursue employment in federal court, courts will consider the amount of time the plaintiff had to consider the agreement and opportunity to consent with a lawyer). These contentions also do not create an issue of fact as to contractual formation. Just above Plaintiff's electronic signature, the arbitration agreement specified:

> **I ACKNOWLEDGE THAT I (1) HAVE CAREFULLY READ THIS AGREEMENT, (2) HAVE HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL AND HAVE DONE SO TO THE FULL EXTENT THAT I DESIRE, (3) HAVE HAD THE OPPORTUNITY TO AND HAVE NEGOTIATED THE TERMS AND CONDITIONS OF THIS AGREEMENT, AND (4) UNDERSTAND THE TERMS AND CONDITIONS OF THIS AGREEMENT.**

(ECF No. 7-2, PageID.70).

Nevertheless, Plaintiff says that after being hired, she was "immediately instructed to complete onboarding and computer-base training before starting work on the floor." (Decl. ¶ 10, ECF No. 14, PageID.112). She "was required to sign numerous Human Resources ("HR") documents quickly and complete multiple training modules under strict time deadlines." (*Id.* at ¶ 11). Furthermore, "[e]mployees were repeatedly told to 'click through' training materials rapidly because it was impossible to finish on time if we had read everything on the screen" and "[i]f we did not finish on time, our station, as a whole, would receive bad marks or would be

penalized from headquarters." (*Id.* at ¶¶ 12-13). Plaintiff also claims that "[i]ndividual employees were also threatened with write-ups or termination if they did not finish all their computer training on time." (*Id.* at ¶ 14). But Plaintiff does not say that she personally was threatened, nor that any threat related to the onboarding process specifically. Nor does Plaintiff contend she sought and was denied additional time to review the materials. On this record, this is not enough to create a genuine issue of material fact as to contract formation. *See Hammond*, 2020 WL 6459642, at *9 (collecting cases and concluding contention that employee was rushed through onboarding failed create issue for hearing); *Schnaudt v. Johncol, Inc.*, No. 2:15-CV-2619, 2016 WL 5394195, at *4 (S.D. Ohio Sept. 27, 2016) (concluding that being rushed into a signing does not invalidate contract); *Bryant v. GMAC Mortgage Corp.*, No. 5:02-cv-51, ECF No. 49 (W.D. Mich. Jan. 30, 2003) (Enslen, J.) (citing *Dombrowski v. City of Omer*, 502 N.W.2d 707, 710 (Mich. Ct. App. 1993) for the proposition that "[a]s long as Defendant did not prevent Plaintiffs from reading the Note or any other document by some stratagem, trick, or artifice, Plaintiffs bear the full consequences of their failure to read the document.")

But even if there was an agreement to arbitrate, Plaintiff says the Court should conclude that it is not enforceable. Plaintiff's objections make myriad arguments that largely rehash those already considered, and rejected, by Magistrate Judge. The Magistrate Judge properly analyzed Plaintiffs' claims here, and nothing in Plaintiffs' objections changes the fundamental analysis. Plaintiff largely objects to the take-it-or-leave it nature of the agreement and the various terms she assented to by signing it. None of Plaintiff's arguments are persuasive. They do not demonstrate the agreement is unconscionable.

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (ECF No. 19) is **APPROVED AND ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel Arbitration (ECF No. 7) is **GRANTED.**

**IT IS FURTHER ORDERED** under 9 U.S.C. § 4 that plaintiff proceed with her claims as provided in the arbitration agreement, and under 9 U.S.C. § 3 that this matter is **STAYED** pending completion of the arbitration. The parties shall file a status report with the Court every 90 days, and upon completion of the arbitration process.

**IT IS SO ORDERED.**

Dated:   January 13, 2026              /s/ Robert J. Jonker
                                                                         ROBERT J. JONKER
                                                                         UNITED STATES DISTRICT JUDGE